Good morning, everyone. Welcome to today's Ninth Circuit Oral Arguments. I'm Judge Sanchez and with me are Judge McCune and Judge Smith, and we're pleased to have you for these arguments. We have a number of cases that have been submitted. I'm going to run through those briefly before we get to our argued cases. Jose Zamora-Vazquez v. Garland, case number 22-1299. Maria Guadalupe Rosales-Martinez v. Garland, case number 22-1980. Alexander Bayonne-Stross v. Zillow, Inc., in Trulia, LLC, case number 22-36000. And Marcelina MacArthur v. Kijikazi, case number 23-35050. And the first case for argument is Andrea Kane v. Providence Health and Services, Washington, case number 22-36010. Counselor, you may approach. Good morning, Your Honors. Chen-Chen Jiang on behalf of plaintiffs, appellants, Drs. Andrea Kane, Brooke Lang, and Christopher Rabin. Before I begin, I'd like to reserve three minutes for rebuttal purposes. You may. May it please the Court. This case is about a hospital that failed to take any action when it knew that one of its physicians was threatening, discriminating, and retaliating against others. Providence could have revoked that physician's privileges. It could have barred him from the premises in accordance with its own policies. But instead, it simply informed him who complained, leading to worsening conduct and worsening threats. Now, whether it's under the common law duty to provide a safe workplace or the wall ads prohibition against discrimination, Providence hopes to wash its hands of this. And the district court below allowed it to. That was error. Plaintiffs met the plausibility standard at this early stage of the case. And at the very least, should have been afforded leave to amend their claims. So the WLAD or will add enlarges the common law meaning of what an employer is. Tell me why you think that that enlarged understanding of employer encompasses Providence. So you're correct. Your Honor, the wall at statutory definition has been interpreted by Washington courts to be quite large. And it it actually states it includes any entity that operates directly or indirectly in the interest of an employer. So here we have alleged that Providence partners closely with Mednax, the contracting agency. We really don't have any Washington case, do we? That suggests that just operating together is enough. I mean, I went through the Washington cases and I was trying to find one that would help you. That would suggest that somehow this particular situation would make this particular hospital an employer. And I really agree with the district court. It's not a common law employer. So I'm looking at the second part, which my colleague is now asking about. And then I looked at all the cases that suggest what kind of a person would be that kind of an employer. And there is one, the Burer versus Steward title, which makes apparent such a corporation with its affiliate. I think there is also a case which might make Barsotti himself an employer, because there are cases which say the employer could be liable for some discriminatory acts. And Brown thereafter said the language means when it's an individual supervisor, that can be individual. But I can't find any case that says that someone who is at best an independent contractor working for the corporation then binds the corporation. Your Honor is correct that no Washington court has had the opportunity to consider this exact set of facts, so this hospital arrangement. But what we do have is the broad purposes of the WALADS, Prohibition Against Discrimination. We have the broad plain language of the statute itself. But you have entities and individuals who are subject to that liability or could be on the right set of facts. But now we're trying to determine, and we're putting into action if we ask you, whether somebody's independent contractor could bind the one who contracts with them. Because your complaint does not allege that Barsotti is an employee of the hospital. It does allege that he was chief of the medical community there. But all of the medical community are independent contractors of this independent contractor, Mednax. They're employees of them. Barsotti's an employee of them. The doctors are employees of them. And so I'm trying to, one time again, help me why I should go so far as to interpret Washington law to include that. Because I can't find Providence to be the employer of Barsotti or anybody. So I'm having a tough time with Respondiat Superior even. Well, two responses to that, Your Honor. First, Washington case law is clear just because it's an independent contractor. That does not excuse you from liability under the WALAD. So Marquise, for example, that was an independent contractor, but it was still a WALAD claim. And that makes sense because the WALAD is meant to be broadly construed. It is meant to eradicate discrimination. And sometimes it looks just like in this case. What's the name of that case again? Marquise, M-A-R-Q-I-E-S. It was a retaliation case. Let me ask you. I have two. I have a lot of questions, but I'll ask you two of them. The first of these is that, and I agree with you that the WALAD is a different definition than the common law definition. You did not have an opportunity to amend. That's correct. Is it your view that you would need some discovery in order to have the court make a resolution of whether or not Providence is acting in the interest of the employer? Yes. We believe we are entitled to that discovery, and as evidence of that, many of the other cases analyzing joint employment are all at the summary judgment stage after key pieces of evidence have been discovered. Now, we believe our allegations are sufficient enough to entitle us to that discovery. For example, we would want to look at the contract between Providence and Mednax to see what powers were retained by Providence in order to control. Well, that also relates to the common law issue, doesn't it? I mean, I forget how many Bure lists all these criteria. There's like, I don't know, 10 or more criteria, some more important than others, according to Bure. But you would need to look at the contract, I assume, the various contracts, in order to also make a determination on the common law. That's absolutely right, Your Honor. That control over the means and manner of the work is critical to the common law analysis itself, and so we would need discovery. And that is why courts have regularly determined that fact-intensive cases like these employment cases are not proper for determination on the law or at the 12B6 stage. But in the complaint, you don't allege that the hospital controls what work Mednax does or what work Pediatrics does or what work your clients do. In fact, quite the opposite. You say Mednax controls all of this and that the hospital merely hires Mednax to do the work. Well, I respectfully disagree, Your Honor. Where in the complaint do you allege that? Because I've looked at your complaint pretty well, so why don't you refer me to where you say that? Yeah. In paragraph 2.10, we talk about how Providence's control of privileges, ability to choose. Well, the privileges, if we're going to talk about the privileges and the nurses and the technology, we already get a case dead on point in the Ninth Circuit that would suggest that's not enough. I disagree, Your Honor. That case is not on point for three reasons. First, it uses the wrong test. That was a Title VII common law test that we are arguing is not applicable for WALAD. It should be the economic realities test. Second, it was at... Does Washington ever use the economic reality test? Yes, it does for the minimum wage. For this kind of stuff? Well, the Minimum Wage Act is... For the Minimum Wage Act, but not for this kind of stuff. You're correct, Your Honor. The Washington State Court has not had an opportunity to decide, but if you look at the statute... You need to go to the economic test? I mean, I don't know why. I know you've argued that, but that's... I don't understand why you need to import that test into the WALAD. It was just another basis for finding that Providence is an employer, but you're right, Your Honor. We don't need to import the economic realities test because here the allegations are sufficient about the control that Providence has. Well, what do you have... I mean, I take Judge Smith's point that admitting privileges, numerous cases have said that's not enough to assert control for employment purposes. So what else do you allege that gets you closer to a common law relationship? Well, we know that Providence had to supervise and monitor the work that these doctors do in order to assure quality care. And so they were monitoring... Just a minute. You don't allege that, though. All you allege is that they, for sure, hire Mednax, who exerts, and I'm quoting 2.9, exerts considerable control over pediatrics-employed physicians that Mednax placed at Providence. So what you're really arguing is that Mednax and Barsotti, their employee, who, if you will, Providence has hired to be the medical director, has this control. But I'm still trying to figure out where we get the extra control from Providence. Well, Your Honor, I'm cut into all of my rebuttal time, but I do want to end on this. Just because Mednax is the doctor's employer does not preclude Providence from also being the employer. And so just because we have pled that Mednax has control does not automatically let Providence off the hook. Well, you've got to allege it. And we have. We believe that in 2.10, we talk about the control of the privileges, which talks about quality. In 2.28 to 3.7, we talk about all of the patient concerns. And at this stage, reasonable inferences are taken in our favor. And we talk about control over the premises, how plaintiff's work is integral to Providence's business. That's in 2.11, as well as Dr. Barsotti as chief medical operators, his personal control. And so I've gone way past my time now. So I hope that I will have some time for rebuttal. We'll give you a little time for rebuttal. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Victoria Slade representing Providence Sacred Heart Medical Center. This action, thank you for your time this morning. This is an employment case. This is a case where the three plaintiffs, all highly skilled, savvy, educated physicians, had a contract with their employer, Mednax and Pediatrics. I'll just refer to them as Pediatrics as one. They're essentially the same company. They had concerns about the conduct of their boss, a pediatrics employee named Dr. Ilg. They filed an action against their employer. Their employer had an arbitration clause in their contract and has moved that litigation to arbitration, where the plaintiffs are currently pursuing their claims against their employer. What they're trying to do now is also pursue the same claims against Providence, which is the hospital where they happen to be placed under their contract with their employer. There are two ways that they could conceivably state a cause of action against Providence. One would be to allege sufficient facts to support a finding that a Providence actor violated the law. Another would be to allege sufficient facts to show that Providence either directly, under the common law test, was their employer under Washington law, or that under the Washington law against discrimination test or some other test, that Providence should be held accountable for the conduct of someone other than a Providence employee, which would be Dr. Ilg. Let me start you with that. Why aren't the allegations sufficient to show at least beyond a motion to dismiss stage that Providence was doing things in the interest of Mednax and pediatrics? That there was this cozy relationship with Dr. Barsotti and Mednax, and he helped Dr. Ilg get appointed to his position, and that they worked in conjunction. Why isn't that enough to get you there for a WLAD claim? There are two avenues for that, Your Honor. The first is why is that enough for that to establish that Providence was the common law employer. If you look at Burbee-Stewart, if you look at Awana via the Port of Seattle. But I'm not talking about a common law employer. I'm talking about a statutory definition. The statutory definition would include, it expands it under the Washington law against discrimination, to include a person acting in the interest of an employer. And both sides agree that that is the test, and it is expansive. However, even if that definition is met, what the Stewart case, what the Brown v. Scott paper case, other cases arising under this expansion of the definition of employer, indicates in which case they're responsible for their own discriminatory acts. So why aren't the allegations sufficient to suggest a hostile work environment, for example, which itself would be a discriminatory act? If Dr. Barsotti had sufficient control over the environment and the physicians themselves, knew about what was happening with these allegations and chose not to do anything about it, why isn't that a hostile work environment subject to having been a discriminatory act? If the court looks at the allegations that give rise to the hostile work environment and other claims, they're all the conduct of pediatrics and Dr. Ilg. Dr. Ilg was the individual who the plaintiffs allege controlled their day-to-day work. Dr. Ilg is an individual who the plaintiffs allege made discriminatory comments, who created pay disparities between men and women. Dr. Ilg is an individual who, through a shocking course of events, Well, I understand all that. They complained to Barsotti, who's the chief medical officer. Certainly. Dr. Barsotti did not work for Mednax. Dr. Barsotti did not work for pediatrics. He worked for Providence. And when the plaintiffs came to Dr. Barsotti and said, we have concerns, his response was, you need to talk to your employer about that, because Providence does not have oversight over Dr. Ilg. But, I mean, you know, if we're reading the allegations in favor of the plaintiff and the light most favorable to the plaintiff, and there are also allegations that afterwards he said, I failed you, and there are allegations that he exerted significant control over the staff, including physicians, why doesn't that get you there? That his inaction here over Dr. Ilg's actions were sufficient to create that hostile environment and be itself a discriminatory act. And that's where one of the ifs in your scenario, Your Honor, I don't think is borne out by the pleadings, and that is the idea that Dr. Barsotti had significant control over the pediatrics physicians, including Dr. Ilg. I don't see allegations in the pleadings that would support that. The allegations related to Providence and Dr. Barsotti as its agent are that they controlled medical privileges, that they provided the facility, the equipment, the staff. Did he hire Ilg? No, Dr. Barsotti did not hire Ilg. They have an insinuation in the complaint that the two had been friends and that Ilg owed him the job. This is all speculation. There's not an allegation saying that Providence had control over whether Ilg would be hired, whether he would be disciplined. The only recourse that the plaintiff alleged that Providence would have had would be to ban him from the building or remove his medical privileges. Well, what about that? All we don't have is the contract. You know, it seems to me that we're talking a little bit in the hypothetical because we don't have a contract between Mednax and Providence, correct? Or at least that's not on the tape. It's not on the record, Your Honor. And so that really would lead me to wonder why at this stage there wouldn't be some at least preliminary discovery to see if these allegations could be made with more nuance because we've got all these indicia of employer that are laid out in VRR, but a lot of those you could not really make an allegation about in good faith unless you had some factual basis. So apart from letting it go forward at this point, why wouldn't there just be at least an opportunity to amend, which is the normal course? Certainly, Your Honor. And the law is in favor of allowing leave to amend. In this case, this is a detailed complaint. It's 20 pages long. The plaintiffs were in this work environment day after day. They knew who was supervising them. They knew if they had performance evaluations. They knew who they had a relationship with, and they put everything they had out there, Your Honor. They alleged every way in which they could conceivably attach Providence to this case. Did the district court let them amend at all? The district court did not let them amend, Your Honor. With this kind of stuff, one amendment seems almost normal. I mean, you're saying stock them off right now. I guess I'm just having a tough time with that. Now, I want to make sure I heard you. It seems to me that you just argued that Barsotti was an employee of Providence. Barsotti was. Okay. Because I didn't see that in the complaint. Dr. Ilg is an employee of Mednax Pediatrics, and he is the bad actor in this case. Dr. Barsotti had a role with Providence overseeing various departments. Well, he had a role. He was, in fact, the chief medical director. But I did not see any place here that suggested he became an employee of Providence, but that he was just an independent contractor under Mednax, as were all the rest. And, Your Honor, I should clarify that I can't speak to whether his classification was. I can tell you that he was aligned with Providence, and he is a representative of Providence. Dr. Barsotti is. But if you look at the. . . Well, he was hired by them to be their medical director. That's why I wanted to make sure what I heard from you. And thank you for ensuring. I want to make sure that you're clear. What the plaintiffs don't allege is that Dr. Barsotti or any actor on behalf of Providence engaged in conduct that could give rise to a violation of the law. The closest they come is to argue that Dr. Barsotti had a duty to take action once he knew that some third party working for a different third party was bothering the plaintiffs. But if you look at, for example, the Iwana versus the Port of Seattle case, it shows this. . . It's hard in the hospital context because it's such a messy environment. The Port of Seattle case, contractor is working on a construction project in the terminal, and they reported safety violations and were terminated afterwards. And they alleged that the port, who contracted with their employer, influenced that decision. But the court said you can't bring a wrongful discharge case against the Port of Seattle. They didn't meet any of these indicia of employer according to the relevant tests. That's a little bit different with the port and a construction contract. Here, all of these individuals from Mednex, actually, they populate the neonatal pediatric unit. It's not like some of these cases we see where a doctor has privileges here and a doctor has privileges there. This is sort of like a captive environment. So I appreciated your candor that typically you do get at least one chance to amend. Why wouldn't we just remand it so that could happen? On the face of the complaint, the plaintiffs have very specifically alleged that Mednex had complete control over their day-to-day work. They have alleged everything that they can allege against Providence is that it gave them medical privileges, it controlled who entered the building, and it provided the staff and resources. And it hired someone who was told about this and didn't do anything about it. That individual did not have supervisory authority over the plaintiffs. That is not alleged in the complaint that Dr. Parsodi had the ability or responsibility to take action based upon claims that they are raising against their manager to their own employer. Well, but 2.9 says, in the position of chief medical director, Parsodi exerted considerable control over the physicians that Mednex placed at Providence. They do say that, Your Honor, but that is one of the conclusory allegations. It's in the complaint. But I mean that's the reason one might say, well, maybe you ought to do a little discovery. Maybe you could reallege that. On 2.12 it says, when Providence employee Parsodi left Mednex to assume his position, he retained considerable influence over Mednex. He lobbied Mednex to promote a close personal friend ill to the medical director. Mednex promoted ill to the medical director. I mean that's what they allege. I'm just reading what they say. That's why we didn't want him necessary for your benefit. He didn't need to be your employee. Your Honor, I'm past my time, but I'm happy to answer your question, which is that those allegations do not rely on specific facts showing Parsodi's control over these plaintiffs and their day-to-day work environment. Okay. Thank you. Can I ask you about the negligence claim? Yes. Which I understand it's not employment related, but it's this notion that there were allegations that Dr. Ilk was bringing a firearm to a hospital and plaintiffs made others aware of that and were fearful of it and in combination with certain threats, and Providence didn't take steps affirmatively to stop that threat from happening. Why were those allegations not sufficient in your mind? Certainly, Your Honor. Negligence requires duty, breach, causation, damages, as everyone learns in torts class. In this action, the plaintiffs are alleging they were fearful of Dr. Ilk because they thought that he might bring a firearm to the premises. They allege that Providence I thought I was reading the allegations to mean that he has brought a firearm to the premises. What they don't allege is that they assert that they warned Providence that he was going to bring a firearm and that he then brought a firearm, showed it to them, somehow threatened someone. That is not in the complaint. Had they warned Providence that this individual is carrying a firearm, he's threatened us, and then he did come in and he brought a firearm and they frightened them, that would be a cause of action for the negligence for them not enforcing their policy. Why would, after they leave and Dr. Ilk posts this online statement saying he would break Dr. Lange's hands, which is pretty dramatic, and he's got her picture and her face all over the Internet, she actually gets an email or a text, I guess, from Dr. Barsotti apologizing for failing her. So how would he fail her if he didn't have some duty to do something that would have protected her? Dr. Barsotti is not a legal expert. He is not determining that he believes that he had a certain power or privilege or duty under the law. He is showing humanity in that moment, Your Honor, and I would think that that should not be something that's held against him to establish a relationship. It's not really held against him, but maybe we should find out a little more is really the question here in terms of what is his role. We don't have a clear definition, but it does seem odd to me that somebody is the chief medical officer and that the hospital can just say, well, it's not our problem. There's just some disconnect here, and maybe the contracts will put the nail in the coffin, but I don't know. Certainly, Your Honor, I think if the plaintiffs were granted leave to amend, it would be right back here again or at least back at the district court again pretty fast because they have already alleged the facts that demonstrate unequivocally that their employer was pediatrics and Providence was not. Ms. Chen, we'll give you one minute for rebuttal. Thank you, Your Honors. I'll start by just clarifying one thing. Dr. Barsotti is a Providence employee, and I'll point you to paragraph 2.8 on ER 91. We allege Providence hired Mednax Pediatrics Medical Director Dr. Michael Barsotti. Well, they hired him to be the medical director, but they also hired your clients to be doctors, but they hired them through hiring Mednax. That's the reason. That's the trouble. No, and that's the point I wanted to clear up. Dr. Barsotti was not hired through Mednax. Providence directly hired Dr. Barsotti. I thought he was a Mednax employee. No, and I see the confusion. He was a Mednax employee when Providence hired him, and that's where perhaps inartfully why we put in Mednax director. All I did was read your complaint. That's all I was trying to do, and when I read your complaint, I read the complaint where you say he was a Mednax employee, and then he's hired. I mean, just like your doctors, he was hired as independent contractor through Mednax. I completely understand, but wanted to clarify that that is not the case. Dr. Barsotti was directly. That's not what you alleged then. Okay. And also wanted to touch on the fact that Providence could have done something. It's not that they did not have any power. They could have revoked Dr. Ilg's privileges. They could have limited them. They could have independently investigated him, and all of this is reason why leave to amend is important, and leave to amend should have been granted. Those are additional factual allegations that we would, had we had an opportunity to amend the complaint, add it to the complaint. For instance, we could have elaborated on 2.9 in terms of Dr. Barsotti's options and what power that he did have to control the physicians. We could have talked about how the contract, we believe, retains power for Providence, and we could have talked about how other hospitals, in fact, did revoke or did take action against having Dr. Ilg in their facilities, all of which would speak to the control issue that is here. Thank you very much. Thank you. Thank you both for your helpful arguments. The matter will stand submitted.
judges: McKEOWN, SMITH, SANCHEZ